WEADOCK *v.* JUDGE OF THE RECORDER'S COURT OF
DETROIT.

1. MUNICIPAL CORPORATIONS — POWERS — ORDINANCES—VALIDITY.
   The charter of a municipality authorizing the common coun-
   cil to license and regulate the keepers of junkshops, and to
   regulate the purchase and sale of old junk, authorizes an
   ordinance regulating the storage or keeping of the same;
   said storing or keeping being necessarily incident to said
   business.[1]

2. SAME.
   An ordinance prescribed a restricted district in which the
   keeping of junkshops was prohibited, with a proviso that it
   should not be applicable to such shops as were already estab-
   lished at the time of its passage.  It appeared that such bus-
   iness had then become centralized in such restricted locality.
   *Held,* that such ordinance was void on the ground of unrea-
   sonableness and discrimination.

Mandamus by Bernard F. Weadock to compel William
F. Connolly, judge of the recorder's court of Detroit, to
vacate certain orders dismissing complaints for the viola-
tion of an ordinance.  Submitted February 16, 1909.
( Calendar No. 23,196.)   Writ denied April 24, 1909.

*Bernard F. Weadock (P. J. M. Hally,* of counsel), in
pro. per.

*Miner & Anhut,* for respondent.

McALVAY, J.   This is an application by relator, who
is assistant corporation counsel for the city of Detroit, for
a writ of mandamus to compel respondent to vacate cer-
tain orders made by him, dismissing two cases brought
by the proper authorities under an ordinance of the city

[1]As to the municipal power to regulate business of junk dealers,
see note to *Grand Rapids* v. *Braudy* (Mich.), 32 L. R. A. 120.

As to municipal power over business of junk dealers as nuisance,
see note to *Ex parte Lacey* (Cal.), 38 L. R. A. 657.

of Detroit. The undisputed facts are that two complaints were duly made, and two cases instituted in said court against Moses Rosenzweig, one complaint charging him with unlawfully and wilfully establishing and maintaining, at a specified location, "a place for the storage of junk, rags, old rope, papers, bagging, old iron, brass, lead, commonly known as a junkyard, said premises being located within the district established by the common council within which district a junkyard is prohibited to be established or maintained," contrary to the provisions of a certain ordinance; the other complaint charging him with unlawfully and wilfully establishing and maintaining a junkshop at another and different location, contrary to the provisions of the same ordinance. The answer of respondent admits all the material facts. Answering the order to show cause, respondent asserts that the cases were dismissed and the defendant discharged for the reason that the ordinance under which the complaints were made was invalid and unconstitutional (*a*) because the charter gave the common council no authority to enact the ordinance; (*b*) because the ordinance is unreasonable. The charter provision referred to, as far as it relates to this case, reads:

" The said council may also license and regulate * * * the keepers of junkshops * * * and to regulate * * * the buying or selling of old junk. * * *" Detroit Charter (1904), § 187.

The ordinance in question under which the cases were brought provides as follows:

" It is hereby ordained by the people of the city of Detroit:

" Section 1. That section 1 of an ordinance entitled, 'An ordinance prescribing certain limits within the city of Detroit where a junkshop or what is commonly known as a junkshop, for the purchase, storage and sale of junk, rags, old rope, papers, bagging, old iron, brass, copper, tin, empty bottles, slush or lead, shall not hereafter be established or maintained and the storage or buying and selling of the same be carried on,' approved Sept. 3, 1907,

be and the same is hereby amended so as to read as follows:

"SEC. 1. No building, place or lot where junk, rags, old rope, papers, bagging, old iron, brass, copper, tin, empty bottles, slush or lead are bought, sold or stored shall be hereafter used, established or maintained within the territory within the city of Detroit described as all that portion of the city of Detroit bounded on the west by Beaubien street, on the east by Russell street, on the south by Gratiot avenue, and on the north by alley north of and parallel with Napoleon street; also all that portion of the city of Detroit lying north of the alley north of and parallel with Napoleon street and between the boundary lines of the third ward to the northerly city limits; also all that portion of the city of Detroit lying north of the alley north of and parallel with Napoleon street and between the boundary lines of the fifth ward to the northerly city limits: Provided that this ordinance shall not be construed to apply to any junkshop now being conducted or maintained within the territory herein described.'"

It is conceded that the common council has plenary power for the purpose of licensing and regulating the persons engaged in the business of buying and selling old junk, and that such reasonable regulations as the council may see fit to adopt are not open to judicial investigation. It is insisted that, by the provision of the charter above quoted, no power was given to regulate the storage of junk, and therefore this ordinance is invalid. We do not agree with this contention. The rule relied upon by respondent, that the powers which may be exercised by municipal corporations are all derived from the legislature and must be found (*a*) in the express words of the grant, or (*b*) necessarily incident to the powers expressly granted, and (*c*) powers which are essential and indispensable to the declared objects and purposes of the corporation, has always been recognized by this court (*Taylor* v. *Railway Co.*, 80 Mich. 82), and that an ordinance cannot exceed the limit prescribed by the charter. The charge in the first complaint is that the defendant unlawfully kept "a place for the storage of junk commonly called a junk-

yard." The words of the charter and of the ordinance must be taken as used with reference to the business designated. A junk dealer is not a warehouseman. He buys old junk from the owner or from the junk gatherer, and keeps the same in his yard or place of business until sales can be made. The charter contains express power to regulate and license the keepers of junkshops, and to regulate the buying and selling of old junk. The power to regulate has been given a broad signification by the court. To regulate means:

"To adjust by rule, method, or established mode; to direct by rule or restriction; to subject to governing principles or laws." 24 Am. & Eng. Enc. Law (2d Ed.), p. 243 et seq.

The storing or keeping of old junk which this ordinance aims to regulate is necessarily incident to the business of buying and selling junk.

Respondent's second contention is that this ordinance is unreasonable, and therefore invalid. This is not the usual ordinance enacted under charter powers for the purpose of the regulation of a certain trade or occupation as upon a first reading would appear. This ordinance is not one providing for the confinement of a class of business within a certain restricted territory easily supervised by the authorities. Nor does it propose to exclude all of a certain class from certain territory as did the ordinance under consideration in *Churchill* v. *Detroit Common Council*, 153 Mich. 93. It is an ordinance prescribing a certain restricted locality in which a certain class of business shall *not* be established or maintained, with a proviso "that this ordinance shall not be construed to apply to any junkshop now being conducted or maintained within the territory herein described." There is therefore an express prohibition against disturbing those already established in this district, and it appears in the return of respondent, to which there is no denial entered, that the traffic in junk has become centralized within the restricted locality. The validity of the ordinance is not

defended as an exercise of the police powers of the municipality in the interests of the public health. Rela- tor cites and relies upon the decisions of this court relative to the right to regulate this class of business. See *City of Grand Rapids* v. *Braudy*, 105 Mich. 670 (32 L. R. A. 116). This case, as well as the *Churchill Case*, supra, upheld the reasonable exercise of the authority conferred by the legislature, and both cases rest upon the propo- sition that such classes of business especially require police supervision. In the *Braudy Case* the question of restricted locality was not before the court; but this court held, where the question was squarely raised, in the *Churchill Case*, that the power to regulate authorized a municipality to restrict such business to certain localities. We cannot say in the ordinance before us that there is expressed any intent, by the reasonable exercise of the po- lice powers, to regulate and control the junk business, by prohibiting its maintenance within the limited territory where it is now centralized and permitting it everywhere else in the city. The language of the court in both the cases cited indicates that from the nature of this business, and the persons who deal with those engaged in it, police supervision is necessary, and can be better maintained by license and restriction of the territory occupied. We agree most heartily with such decisions, but in our ex- amination of the case before us are unable to convince ourselves that this ordinance can be held to be within these decisions. In the first place, it is not restrictive as to where the business may be maintained, and no reason appears why those not already established there should be prohibited from the district created. Those engaged in this business now centralized in the prohibited territory are not disturbed, although engaged in the same business and under the same kind of license. All others must keep away from this district, and scatter where they please over miles of territory. By what reasonable exercise of delegated power may such discrimination be upheld? If a power is conferred, but the mode of its exercise is not

prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid. *People* v. *Armstrong*, 73 Mich. 293 (2 L. R. A. 721), citing 1 Dillon on Municipal Corporations (4th Ed.), § 328. It follows that all individuals of a certain class within a municipality under its legislation must be treated alike and without discrimination. This right is not granted by this ordinance.

Our conclusion is that this ordinance is both unreasonable and unlawfully discriminating. It is therefore unconstitutional and void. *Tugman* v. *City of Chicago*, 78 Ill. 405.

The action of the recorder's court is sustained. The writ of mandamus is therefore denied.

BLAIR, C. J., and GRANT, MONTGOMERY, and BROOKE, JJ., concurred.